**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

RONALD BAILEY,  :

                     Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                     Defendant.  :

Case No. 3:09-cv-120

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

Plaintiff filed applications for SSD and SSI on December 17, 2004, alleging disability from November 11, 2004, due to a knee impairment. (Tr. 47-49; 242-48; 59-66)[1]. Plaintiff's applications were denied initially and on reconsideration. (Tr. 30-32; 250-52; 34-35; 254-56). A hearing was held before Administrative Law Judge Thaddeus Armstead, (Tr. 257-305), who determined that Plaintiff is not disabled. (Tr. 11-23). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Armstead's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that Plaintiff has severe history of multiple left knee surgeries with residuals, pain in the left lower extremity without occlusion, neurologically intact, none acute, history of right knee strain, and obesity, but that he does

---

[1] The record indicates that Plaintiff filed an application for SSD in 1990, which was denied at the reconsideration level and again in 1998, which was denied at the initial level and that he took no further appeals of either of those denials. *See,* Tr. 67; 68.

not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 18, ¶¶ 3, 4). Judge Armstead also found that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.*, ¶ 5; Tr. 22, ¶ 10. He then used section 202.20 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.* Judge Armstead concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 23).

Plaintiff has a history of several left knee surgeries including a left knee replacement surgery which was performed in 1998. *See, e.g.,* Tr. 181. Subsequently, Plaintiff experienced complications including a serious infection which required a skin graft. *See, Id.*; Tr. 128. Over time, Plaintiff continued to experience pain and discomfort in his left knee. *Id.*

The record contains a copy of Plaintiff's treatment notes dated November 23, 2004, through July 11, 2005, from Orthopedic Associates of Southwest Ohio where Plaintiff received treatment from Dr. Buffington and, after his retirement, from Dr. Urse. (Tr. 125-31). After initially evaluating Plaintiff, Dr. Buffington referred Plaintiff to Joint Implant Surgeons. *Id.*

The record contains a copy of Plaintiff's treatment notes dated December 30, 2004, to November 2, 2005, from Joint Implant Surgeons where Dr. Berend was Plaintiff's treating physician. (Tr. 155-86). At the time Dr. Berend initially evaluated Plaintiff, he noted that Plaintiff had reported his left knee had became very painful lately, that his level of activity was moderate manual labor, he was able to ascend and descend stairs with the assistance of a handrail, used a cane to ambulate, and his range of motion of the left knee was decreased. *Id.* Dr. Berend also noted that there was mild effusion and tenderness of the left knee. *Id.* Dr. Berend concluded that Plaintiff's

4

diagnosis was failed arthroplasty secondary to infection/inflammation of the internal prosthesis of the left knee, pain in the left knee, and status post total knee arthroplasty on the left. *Id.*

Dr. Berend treated Plaintiff conservatively without improvement. *Id.* In May, 2005, Dr. Berend performed a revision of left total knee arthroplasty. *Id.*; *see also,* Tr. 114-24. Subsequently, Dr. Berend noted that Plaintiff's left knee arthroplasty was in satisfactory position and alignment and that Plaintiff was improving. (Tr. 155-86).

Dr. Urse reported on July 11, 2005, that Plaintiff was doing well clinically, asked for nothing more for pain, and that he had no signs of significant calf swelling, erythema, or warmth. (Tr. 125-26).

On November 2, 2005, Dr. Berend reported that Plaintiff complained of pain with activities and knee buckling, that he was able to ascend stairs but could not descend stairs, was able to walk less than five blocks, and that there was tenderness throughout the left knee. (Tr. 155-86).

The record contains a copy of Plaintiff's treatment notes from Dr. Greer dated April 27, 2000, through July 25, 2007. (Tr. 191-201). Those records reveal that Dr. Greer treated Plaintiff over time for deep venous thrombosis without any evidence of pulmonary emboli. *Id.* On December 20, 2000, Dr. Greer reported that Plaintiff not have any prolonged standing but should move around. *Id.* Dr. Greer reported on March 7, 2001, that Plaintiff was doing moderately well and on August 29, 2002, he reported that Plaintiff was on Coumadin and would have to stay on it indefinitely. *Id.* On July 25, 2007, Dr. Greer noted that Plaintiff had a history of multiple procedures on his left leg, that he reported he was able to walk about one block before his left knee pain started, and that late in the day, he had mild edema present from the knee downward. *Id.* Dr. Greer also noted that noninvasive testing indicated chronic nonocclusive deep venous thrombosis

in the common femoral, femoral vein, popliteal vein, and posterior tibial veins, his popliteal pulses were not well-felt, and that there was evidence of severe stasis changes in the left lower extremity. *Id.*

Plaintiff continued to receive treatment from Dr. Berend during the period July 19, 2006, through March 29, 2007. (Tr. 202-09). On July 19, 2006, Dr. Berend reported that Plaintiff complained of pain, swelling, and stiffness of the left knee which occur with activities, that his level of activity was semi-sedentary, he was able to ascend stairs but needed a rail to descend, and that his diagnoses were pain of the left knee, swelling of the left limb, failed arthroplasty secondary to mechanical complication of the left knee, and status post total knee arthroplasty on the left. *Id.* Dr. Berend reported on March 29, 2007, that Plaintiff complained of bilateral knee pain, had continued left lower leg swelling due to multiple knee surgeries (ten total), and a long history of deep vein thrombosis, and that he had not returned to work *Id.* Dr. Berend also reported that Plaintiff needed the assistance of a handrail to ascend and descend stairs, the ranges of motion of his knees were decreased, he had mild effusion on the left and none on the right, and that there was knee tenderness on the right. *Id.*

During that period of time, specifically September 27-28, 2006, Plaintiff was hospitalized for treatment of cellulitis with possible sepsis, chronic venous stasis, hypertension, possible early renal failure, obesity, and arthritis. (Tr. 210-13).

In his Statement of Specific Errors, Plaintiff alleges that the Commissioner erred by failing to adequately consider his obesity, improperly rejecting the implicit findings and opinions of his treating physicians, and by rejecting his allegations of disabling symptoms. (Tr. Doc. 7).

Plaintiff argues first that the Commissioner did not adequately discuss the functional effects of his obesity as a separate medical impairment or its effects on his other impairments.

A social security disability claimant bears the ultimate burden of proof on the issue of disability. *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted). Stated differently, it is the claimant's burden to produce evidence in support of a disability claim. *See, Landsaw,* 803 F.2d at 214.

In determining that Plaintiff is not disabled, Judge Armstead recognized Plaintiff's obesity was a severe impairment because it aggravated Plaintiff's lower extremity pain and limitation of motion. (Tr. 17, 18). However, the record contains no medical evidence that Plaintiff's obesity causes Plaintiff any additional limitation nor did Plaintiff testify that his obesity resulted in additional restrictions on his ability to function or work. Therefore, any absence of a detailed discussion of Plaintiff's obesity by Judge Armstead can simply be attributed to Plaintiff's failure to present any evidence about any alleged limitations which his obesity causes.

Plaintiff argues next that the Commissioner erred by rejecting the implicit findings and opinions of his treating physicians. Plaintiff's position is that Dr. Greer's and Dr. Berend's statements are consistent with the conclusion that he satisfies Listing 4.11A and 4.11B.

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that

claimant did not meet the Listing).  It is not sufficient to come close to meeting the requirements of

a Listing.  *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where

medical evidence almost establishes a disability under Listing 4.04(D)).

> Listing 4.11 requires:
>
> 4.11 *Chronic venous insuffiency* of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:
>
>    A.  Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee of the distal one-third of the lower extremity between the ankle and hip.
>
>    OR
>
>    B.  Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. Pt. 404, Subpt. P., App. 1 § 4.11.

> Listing 4.00G3 provides:
>
> ...
>
> > *G.  Evaluating Peripheral Vascular Disease*
>
> ...
>
>    3.  *What is brawny edema?  Brawny edema* (411A) is swelling that is usually dense and feels firm due to he presence of increased connective tissue; it is also associated with characteristic skin pigmentation changes.  It is not the same thing as pitting edema.  Brawny edema generally does not pit (indent on pressure), and the terms are not interchangeable.  Pitting edema does not satisfy the requirements of 4.11A.

*Id.*, § 4.00G.

Contrary to Plaintiff's argument, neither Dr. Greer nor Dr. Berend's records, findings,

or opinions support a conclusion that Plaintiff satisfies Listing 4.11.  Indeed, neither physician

reported that Plaintiff exhibited brawny edema. First, Dr. Greer described Plaintiff's edema as, at worst, "mild". (Tr. 191). Secondly, Dr. Berend specifically described Plaintiff's edema as "pitting". (Tr. 203). As noted, pitting edema is not the equivalent of brawny edema and does not satisfy Listing 4.11. Finally, neither Dr. Greer nor Dr. Berend documented "recurrent or persistent ulceration".

Under these facts, the Commissioner did not err by failing to find that the implicit findings and opinions of Plaintiff's treating physicians establish he satisfies Listing 4.11A or 4.11B.

Plaintiff argues next that in finding that he is not disabled, the Commissioner erred by rejecting Dr. Berend's opinion that he is disabled.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* at 406, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."

9

*Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[2] explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

In July, 2006, Dr. Berend reported that Plaintiff was "[u]nlikely to return to work." (Tr. 208). However, the Commissioner was not required to give Dr. Berend's opinion controlling or even great weight.

First, Dr. Berend's records primarily reflect Plaintiff's subjective complaints. When Dr. Berend did note objective findings, he described them, at worst, as mild to perhaps moderate. In addition, over time, Dr. Berend reported that Plaintiff was able to walk around the house, go outside at will, ride a stationary bicycle, and drive. Moreover, with the exception of Plaintiff's peri-operative period, Dr. Berend consistently recommended conservative treatment. Finally, Dr. Berend's statement that Plaintiff was unlikely to return to work addresses the question of whether Plaintiff is disabled within the meaning of the Act, an issue that is reserved for the Commissioner's

---

[2] Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

determination.

Essentially, for these same reasons, to the extent that Dr. Greer may have opined that Plaintiff is disabled, the Commissioner did not err by rejecting such opinion. Specifically, Dr. Greer never placed any restrictions on Plaintiff's activities and recommended only that Plaintiff wear a compression stocking to treat his deep vein thrombosis.

Finally, Plaintiff suggests that the Commissioner erred by rejecting his allegations that he spent much or most of his day in either a recumbent or reclining position with his left leg elevated which essentially, according to Plaintiff, is inconsistent with an ability to perform substantial gainful activity.

First, the Court notes that, with the exception of the reviewing physician, none of the physicians of record offered an opinion as to Plaintiff's residual functional capacity. Although, as noted above, Dr. Berend opined that Plaintiff was unlikely to return to work, an opinion that the Commissioner properly rejected, that statement does not describe any alleged functional limitations Plaintiff may have as a result of his alleged impairments. In other words, none of Plaintiff's treating physicians described any restrictions which Plaintiff has and which the Commissioner failed to consider. In contrast, however, the reviewing physician essentially opined that Plaintiff has the residual functional capacity to perform a limited range of light work.

Further, as noted above, the record reflects that Plaintiff has, at worst, mild to moderate clinical findings. There is no medical evidence that establishes the medical necessity of Plaintiff spending much or most of his day in either a recumbent or reclining position with his left leg elevated. In addition, the record reflects that Plaintiff engages in a variety of activities which are inconsistent with his allegation of the need to spend much or most of his day in either a

recumbent or reclining position with his left leg elevated. For example, as noted above, Plaintiff walks about, is able to ride a stationary bicycle, and drives. Plaintiff also cooks, shops, attends church, visits others, and has traveled to Gatlinburg. (Tr. 275-84).

Under these facts, the Commissioner had an adequate basis for rejecting Plaintiff's allegations that he spends much or most of his day in either a recumbent or reclining position with his left leg elevated.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

February 2, 2010.

                  *s/ Michael R. Merz*
                  United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6${}^{th}$ Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).